IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JACK ADRIAN and VICKI ADRIAN, )
                              )
            Plaintiffs,       )
                              )          CIVIL ACTION
v.                            )
                              )          No. 11-1265-KHV
WESTAR ENERGY, INC., et al.,  )
                              )
            Defendants.       )
_____)

**MEMORANDUM AND ORDER**

Jack and Vicki Adrian bring suit for damages against Westar Energy, Inc., three Westar subcontractors and the Reno County, Kansas Board of Commissioners for conduct related to the construction of an electrical substation on property adjacent to plaintiffs' land. In their individual and official capacities, plaintiffs also sue the Reno County Sheriff, Randy Henderson, three Sheriff's Deputies and a Sergeant. Against Westar and its subcontractors, plaintiffs allege negligent supervision, negligence, breach and/or misuse of an easement, trespass, conversion, nuisance, negligent misrepresentation and inverse condemnation. Against the Reno County defendants, plaintiffs allege Fourth Amendment violations under 42 U.S.C. § 1983, including deprivation of property, harassment and unlawful search and seizure. This matter is before the Court on plaintiffs' Application For Restraining Order And/Or Temporary Injunction (Doc. #25) filed September 21, 2011[1] and the Board of Commissioners' Motion To Dismiss (Doc. #36) filed October 31, 2011. For

---

[1] Plaintiffs request a hearing, but upon reviewing the record the Court finds that a hearing would not assist in deciding the issues presented. A hearing is therefore unnecessary. See Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (overruling motion for preliminary injunction without hearing because relief in motion unrelated to relief sought in complaint); Markee v. Werholtz, No. 03-3120-CM, 2004 WL 2278570, at *1 (D. Kan. May 21, 2004) (same); McCormick v. Farrar, No. 01-4136-SAC, 2001 WL 1456796, at *1 (D. Kan. Oct. 11, 2001)
(continued...)

the following reasons, the Court overrules plaintiffs' motion and sustains defendant's motion.

## **Facts**

The complaint alleges the following facts.

On May 12, 1960, Kansas Power and Light Company, now Westar Energy, received a right of way for an electrical transmission line on property located at 00000 N. Willison Road, Buhler, Kansas. The right of way states that the "[g]rantee shall repair any damage to property of Grantor(s), or pay any substantial damages which may be caused to the property of Grantor(s) by the erection, reconstruction, operation, and maintenance" of the line. In 1996, plaintiffs purchased the property. Since then, plaintiffs have improved the property by installing utility services, a well, a driveway, fishing ponds and trees.

In the fall of 2006, Westar held open houses in Reno County to discuss building a new electrical substation. Plaintiffs were not aware of these forums. They first became aware of Westar plans when they found stakes in their property from Westar surveyors. In December of 2006, a Westar representative told plaintiffs that it was planning to build a new substation on the lot adjacent to plaintiffs' property. At a Reno County Planning Board meeting on January 18, 2007, Jack Adrian opposed the plan because of draining, flooding and tree issues. The Board nevertheless approved Westar's plan.

Westar purchased the adjacent property for the new substation and subcontracted with Wolf Construction, Inc., Royer Brothers Tree Service, LLC and Par Electrical Contractors, Inc. to complete the project. On September 26, 2008, plaintiffs gave a temporary construction easement to Westar,

---

[1](...continued)
(hearing unnecessary where it would not assist court in deciding issues presented).

its agents, subcontractors and representatives.

On August 22, 2009, Jack Adrian saw Westar employees, subcontractors, agents and/or representatives enter his property without permission to fish in plaintiffs' ponds. When the workers saw him they jumped into their truck and sped off, dislodging the truck's tailgate which landed on plaintiffs' property. Jack Adrian notified Westar and the Sheriff's Office about the incident. A Sheriff's Deputy made a report and retrieved the tailgate.

In July of 2010, Westar began putting transmission poles immediately east of plaintiffs' property. In late August of 2010, Westar notified plaintiffs that it planned to repair the line that crossed plaintiffs' property. On August 31, 2010, Jack Adrian arrived at his property to find his driveway destroyed by a sunken semi-truck. As he drove onto the property, Detective John Culley with the Reno County Sheriff's Office stopped him, prevented him from taking pictures of the damage and made him leave. Jack Adrian notified the Sheriff, Randy Henderson, of the incident.

On September 1, 2010, Mitch Harris, a Reno County Sheriff's Deputy, and two other uniformed deputies, prevented Jack Adrian from entering his property. He again notified Westar and Sheriff Henderson. Sheriff Henderson said that he would look into the incident. On September 5, 2010, Jack Adrian again tried to access his property, but Sheriff's Deputy Travis Vogt stopped him. Jack Adrian contacted the Sheriff's Office and spoke to Sergeant Lance Smith who stated that he was in charge and that plaintiffs were not allowed on their property. Plaintiffs assert that by enacting, implementing and/or allowing a policy that permits off-duty Reno County Sheriff's Office employees to act as private security under the guise of their authority as law enforcement officers, the County

defendants violated plaintiffs constitutional rights.[2]

On September 7, 2010, a Westar truck followed Jack Adrian from his property to his work. On September 12, 2010, a Westar vehicle again prevented him from entering his property. That day, Jack Adrian heard gunfire and saw Westar employees, agents and/or representatives hunting on his property without permission.

From September 1 to September 12, 2010, Westar and off-duty Sheriff's Deputies hired by Westar denied plaintiffs access to their property. During that time, plaintiffs repeatedly notified Westar and the Sheriff's Office of the various incidents described above. Because plaintiffs were unable to access their property, they lost over 300 recently-planted trees, were unable to access their farm equipment and could not care for their fish or enjoy their property.

Construction of the substation caused extensive damage to plaintiffs' property. Workers tore down gates, threw garbage and fence parts into plaintiffs' fishing ponds, destroyed plaintiffs' driveway and grass, and left spikes, nails, wood boards, sharp debris and other trash all over the property. They also took large wooden poles that belonged to plaintiffs. Westar did not clean up, repair or compensate plaintiffs for the damage that it caused.

Since regaining access to their property, plaintiffs have heard a loud humming sound coming from the new substation, yet Westar has not screened or buffered the substation from plaintiffs'

---

[2] The County attached to its reply a copy of its written policy on permitting the Sheriff to authorize and assign off-duty commissioned officers to work for outside employers. A Resolution Providing For Conditions Pertaining To Outside Employment For Commissioned Officers In The Sheriff's Departments (Doc. #45, Ex. A) filed November 22, 2011. Because the County presented this document for the first time in its reply, the Court does not consider it in ruling on the pending motions. See Green v. New Mexico, 420 F.3d 1189, 1198 (10th Cir. 2005) (generally, nonmoving party should have opportunity to respond to new material presented for first time in movant's reply; court does not abuse discretion by precluding surreply if it does not rely on the new material).

property. In October of 2010, Jack Adrian saw a Par Electrical truck driving off with his firewood. Plaintiffs continue to suffer from flooding, erosion and drainage issues due to defendants' activities on their property. Over the past year, Westar agents, representatives and employees have harassed plaintiffs. Since construction began in 2007, Westar, its agents, representatives, and employees have continuously left trash on plaintiffs' property.

## Analysis

### I. Temporary Restraining Order And/Or Temporary Injunction

Although plaintiffs' complaint seeks only money damages, they filed a separate motion for a restraining order and/or temporary injunction. Plaintiffs seek injunctive relief "preventing Westar, its representatives, agents, subcontractors, and employees from entering Plaintiffs' property and performing any construction while this case is pending." Doc. #25 at 2. They seek this relief to prevent a violation of their rights, to prevent tampering with or destruction of evidence and because Westar has not compensated them for past property damage. Id.

Rule 65, Fed. R. Civ. P., governs the issuance of preliminary injunctions and temporary restraining orders. A temporary restraining order is an emergency remedy, which is reserved for exceptional circumstances and lasts only until the Court can hear arguments or evidence regarding the controversy. West v. Derby Unified Sch. Dist. No. 260, 23 F. Supp.2d 1220, 1221-22 (D. Kan. 1998); see Fed. R. Civ. P. 65(b). A preliminary injunction is an order issued only after notice and hearing which restrains a party pending a trial on the merits. West, 23 F. Supp.2d at 1221-22; see Fed. R. Civ. P. 65(a). Because both remedies are drastic – the exception rather than the rule – plaintiffs must show that they are clearly and unequivocally entitled to relief. Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009); Oltremari v. Kan.

Social & Rehabilitative Serv., 871 F. Supp. 1331, 1344 (D. Kan. 1994). The Court has discretion whether to grant such relief. ClearOne Commc'ns, Inc. v. Bowers, 643 F.3d 735, 773 (10th Cir. 2011); Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1156-57 (10th Cir. 2011).

Although the two remedies are different, they both require plaintiffs to show that (1) they will suffer irreparable injury absent injunctive relief; (2) the threatened injury outweighs the harm the proposed injunction may cause the opposing parties; (3) the injunction would not be adverse to the public interest; and (4) plaintiffs are substantially likely to prevail on the merits. Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003); West, 23 F. Supp.2d at 1221-22. Plaintiffs also must establish a relationship between the injury claimed in their motion and the conduct alleged in the complaint. Little v. Jones, 607 F.3d 1245, 1251 (10th Cir. 2010); Hicks v. Jones, 332 Fed. Appx. 505, 507-08 (10th Cir. 2009); Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam); McCormick v. City of Lawrence, Kan., No. 02–2135–JWL, 2002 WL 31385811, at *3-5 (D. Kan. Oct. 9, 2002).

Here, plaintiffs have not linked the injunctive relief that they seek to the conduct alleged in their First Amended Complaint (Doc. #11) filed September 6, 2011. Plaintiffs' motion requests injunctive relief for three reasons: (1) to prevent a violation of their rights during the litigation; (2) to prevent tampering with or destruction of evidence and (3) because Westar has not compensated plaintiffs for past property damage. Such prospective relief, however, does not bear on plaintiffs' claims for purely retrospective relief in the form of monetary damages. Hicks, 332 Fed. Appx. at 508 (affirming denial of preliminary injunction and temporary restraining order where request for injunctive relief bore no relation to merits of underlying claim); McCormick, 2002 WL 31385811, at *3-5 (motion for temporary relief unrelated to claims where complaint sought only damages and

request for injunctive relief relied only on allegations in motion).

In other words, "it would make little sense to provide plaintiff with temporary relief that would dissipate at the point the court decides the merits of the lawsuit." Id. at *4; see Hicks, 332 Fed. Appx. at 508. Even if plaintiffs were to prevail on their Section 1983 and state tort claims, they would receive only monetary damages. Any temporary injunctive relief would abate when the court decides the merits of plaintiffs' claims. To protect against future infringement of their rights, plaintiffs must allege facts in the complaint that would support a claim for permanent injunctive relief. Absent such allegations, the Court is without power to issue temporary relief. See Hicks, 332 Fed. Appx. at 507-08; Devose, 42 F.3d at 471; McCormick, 2002 WL 31385811, at *3-5.

Moreover, plaintiffs have not specified what evidence defendants might destroy or even shown that defendants are likely to destroy any evidence. Plaintiffs also have not shown that defendants' future activity on the property will cause irreparable harm – especially harm that could not be compensated by an award of money damages. See RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009). The Court therefore overrules plaintiffs motion.

**II.   Motion To Dismiss**

The Board of Commissioners of Reno County move to dismiss plaintiffs' claims against it. The County argues that plaintiffs have not alleged that it maintained a policy or custom that caused plaintiffs to suffer a violation of their constitutional rights. The complaint alleges that the Board enacted, implemented and/or allowed a policy that permits Reno County Sheriff's Office employees to contract with businesses to act as security under the guise of their authority as law enforcement officers. The County concedes that it has such a policy. Plaintiffs contend that the policy contributed to violations of their constitutional rights by enabling off-duty officers to use their positions as law

enforcement officers to force plaintiffs off their land.

### A.     Legal Standards

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded factual allegations and determines whether they plausibly entitle plaintiffs to relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to make its claims plausible – and not merely conceivable – on its face. See Iqbal, 129 S. Ct. at 1949-50; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court draws on its judicial experience and common sense to determine whether a complaint states a plausible claim for relief. Iqbal, 129 S. Ct. at 1950.

The Court does not accept as true those allegations which state only legal conclusions. Id. at 1949. Plaintiffs must frame their complaint with enough factual matter to suggest that they are entitled to relief; a threadbare recitation of the elements of a cause of action supported by labels and conclusions without further factual enhancement is not enough. Id. at 1949-50. To be facially plausible, the complaint must contain factual content from which the Court can reasonably infer that the County is liable for the misconduct plaintiffs allege. Id. at 1949. Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 1950. The degree of specificity required to establish plausibility is context-specific because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends upon the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

### B. Section 1983 Claim Against County

To maintain their Section 1983 suit against the County, plaintiffs must identify a policy or custom of the County that caused the alleged constitutional violation. Monell v. Dept. of Social Servs. of New York, 436 U.S. 658, 694 (1978). The complaint alleges that the Board enacted, implemented and/or allowed a policy that permits Reno County Sheriff's Office employees to contract with businesses to act as security under the guise of their authority as law enforcement officers. Simply identifying a policy is not enough. Plaintiffs must also show that the County, through deliberate conduct, was the moving force behind their alleged injury and that its conduct directly caused their injury. Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 404 (1997). Because Section 1983 does not impose vicarious liability on local government entities, the Court must carefully apply these "rigorous standards of culpability and causation" to ensure that the County is not held liable solely for the actions of its employees. Id. at 405.

To satisfy the culpability element, plaintiffs must allege that the County's policy was either facially unconstitutional or that the County was deliberately indifferent to the known and obvious consequences of the policy. Id. at 407. Here, plaintiffs argue deliberate indifference. They may show deliberate indifference by alleging that the County had actual or constructive notice that its action or failure to act was substantially certain to result in a constitutional violation, and it consciously or deliberately chose to disregard the risk of harm. Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998). Plaintiffs may show that the County had notice in two ways: (1) by alleging a pattern of constitutional violations or (2) in a "narrow range of circumstances," by alleging that a constitutional violation is a "highly predictable" or "plainly obvious" consequence of the County's policy. Brown, 520 U.S. at 409-10; Barney, 143 F.3d at 1307-08.

Plaintiffs contend that the County showed deliberate indifference to the fact that a property owner who is ordered to leave his property by a uniformed, off-duty Sheriff's Deputy may think that he is being ordered by law enforcement rather than private security. They also argue that the County's policy creates a conflict of interest by causing the Sheriff's Office not to act in the best interest of residents when it conflicts with its own financial interest.

The complaint alleges three incidents in which Reno County Sheriff's Deputies prevented Jack Adrian from accessing or remaining on his property: (1) on August 31, 2010 Detective John Culley of the Reno County Sheriff's Office prevented Jack Adrian from staying on his property to photograph damage caused by a semi-truck and other equipment; (2) on September 1, 2010, three uniformed deputies with the Reno County Sheriff's Office, including Deputy Mitch Harris, surrounded Jack Adrian's vehicle and told him to leave immediately; and (3) on or about September 5, 2010, Travis Vogt, a Reno County Sheriff's Deputy, prevented Jack Adrian from accessing his property. From September 1 to September 12, 2010, Westar, using the services of Reno County Sheriff's Office, deprived plaintiffs of ability to be on their land. After the first two incidents, Jack Adrian complained to Sheriff Henderson. Sheriff Henderson said he would look into it. After the third incident, plaintiff spoke to Sergeant Lance Smith, who told Jack Adrian that plaintiffs were not allowed onto their property.

The complaint does not, however, allege that the County was deliberately indifferent to the alleged constitutional violations. It alleges that plaintiffs reported the incidents to Sheriff Henderson and that he promised to investigate them. The complaint does not allege that Sheriff Henderson or members of the Board of Commissioners deliberately chose to look the other way when faced with a substantial risk that the policy would inflict constitutional injury. See Sauceda v. Dailey, No. 97-

2278-JWL, 1998 WL 422811, at *11-13 (D. Kan. June 12, 1998).  Even assuming that the policy created a conflict of interest within the Sheriff's Office, plaintiffs' First Amended Complaint does not allege a pattern of constitutional violations that would have put the County on notice that its action or failure to act was substantially certain to result in a constitutional violation, or that a constitutional violation was a highly predictable or plainly obvious consequence of the County's policy.  See Sauceda, 1998 WL 422811, at *11-13; Dunn v. City of Newton, No. 02-1346, 2003 WL 22462519, at *8 (D. Kan. Oct. 23, 2003).

Because the complaint does not allege that the County was the moving force behind plaintiffs' alleged injury, it does not state a Section 1983 claim against the County.  See Brown, 520 U.S. at 409-10; Barney, 143 F.3d at 1307-08.  The Court therefore sustains the motion to dismiss filed by the Reno County, Kansas Board of Commissioners.

**IT IS THEREFORE ORDERED** that plaintiffs' Application For Restraining Order And/Or Temporary Injunction (Doc. #25) filed September 21, 2011 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Motion To Dismiss (Doc. #36) filed by the Reno County, Kansas Board of Commissioners on October 31, 2011 be and here by is **SUSTAINED**.

Dated this 5th day of December, 2011 at Kansas City, Kansas.

                                              s/ Kathryn H. Vratil
                                              Kathryn H. Vratil
                                              United States District Judge